FILED
CLERK, U.S. DISTRICT COURT

05/04/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

1  TRACY L. WILKISON
   Acting United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   BYRON R. TUYAY (Cal. Bar No. 308049)
4  Assistant United States Attorney
   Riverside Branch Office
5       3403 Tenth Street, Suite 200
        Riverside, California 92501
6       Telephone: (951) 276-6230
        Facsimile: (951) 276-6202
7       E-mail:    Byron.Tuyay@usdoj.gov

8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        ED CR 5:21-cr-00104-JGB

13            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     PARIS DENISE THOMAS
14            v.

15  PARIS DENISE THOMAS,

16            Defendant.

17

18       1.    This constitutes the plea agreement between PARIS DENISE

19  THOMAS ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the above-captioned

21  case.  This agreement is limited to the USAO and cannot bind any

22  other federal, state, local, or foreign prosecuting, enforcement,

23  administrative, or regulatory authorities.

24                    DEFENDANT'S OBLIGATIONS

25       2.    Defendant agrees to:

26       a.    Give up the right to indictment by a grand jury and,

27  at the earliest opportunity requested by the USAO and provided by the

28  Court, appear and plead guilty to a one-count information in the form

1  attached to this agreement as Exhibit A or a substantially similar

2  form, which charges defendant with Wire Fraud in violation of 18

3  U.S.C. § 1343.

4        b.   Not contest facts agreed to in this agreement.

5        c.   Abide by all agreements regarding sentencing contained

6  in this agreement.

7        d.   Appear for all court appearances, surrender as ordered

8  for service of sentence, obey all conditions of any bond, and obey

9  any other ongoing court order in this matter.

10       e.   Not commit any crime or any act constituting

11 obstruction of justice; however, offenses that would be excluded for

12 sentencing purposes under United States Sentencing Guidelines

13 ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the

14 scope of this agreement.

15       f.   Be truthful at all times with the United States

16 Probation and Pretrial Services Office and the Court.

17       g.   Pay the applicable special assessment at or before the

18 time of sentencing unless defendant has demonstrated a lack of

19 ability to pay such assessments.

20       h.   At or before the time of sentencing, satisfy any and

21 all restitution/fine obligations based on ability to pay by

22 delivering a certified check or money order to the Fiscal Clerk of

23 the Court, to be held until the date of sentencing and, thereafter,

24 applied to satisfy defendant's restitution/fine balance.  Payments

25 may be made to the Clerk, United States District Court, Fiscal

26 Department, 255 East Temple Street, 11th Floor, Los Angeles,

27 California 90012.

28

1         i.   Ability to pay shall be assessed based on the

2   Financial Disclosure Statement, referenced below, and all other

3   relevant information relating to ability to pay.

4         j.   Defendant agrees that any and all restitution/fine

5   obligations ordered by the Court will be due in full and immediately.

6   The government is not precluded from pursuing, in excess of any

7   payment schedule set by the Court, any and all available remedies by

8   which to satisfy defendant's payment of the full financial

9   obligation, including referral to the Treasury Offset Program.

10         k.   Complete the Financial Disclosure Statement on a form

11  provided by the USAO and, within 30 days of defendant's entry of a

12  guilty plea, deliver the signed and dated statement, along with all

13  of the documents requested therein, to the USAO by either email at

14  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

15  Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

16  Angeles, CA 90012.

17         l.   Authorize the USAO to obtain a credit report upon

18  returning a signed copy of this plea agreement.

19         m.   Consent to the USAO inspecting and copying all of

20  defendant's financial documents and financial information held by the

21  United States Probation and Pretrial Services Office.

22     3.   Defendant further agrees:

23         a.   To forfeit all right, title, and interest in and to

24  any and all monies, properties, and/or assets of any kind, derived

25  from or acquired as a result of the illegal activity to which

26  defendant is pleading guilty (collectively, the "Forfeitable

27  Property").

28

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the assets.

c.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of herself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

1          i.   To fill out and deliver to the USAO a completed

2   financial statement listing defendant's assets on a form provided by

3   the USAO.

4          j.   That forfeiture of Forfeitable Property shall not be

5   counted toward satisfaction of any special assessment, fine,

6   restitution, costs, or other penalty the Court may impose.

7          k.   With respect to any criminal forfeiture ordered as a

8   result of this plea agreement, defendant waives: (1) the requirements

9   of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

10  notice of the forfeiture in the charging instrument, announcements of

11  the forfeiture at sentencing, and incorporation of the forfeiture in

12  the judgment; (2) all constitutional and statutory challenges to the

13  forfeiture (including by direct appeal, habeas corpus or any other

14  means); and (3) all constitutional, legal, and equitable defenses to

15  the forfeiture of the Forfeitable Property in any proceeding on any

16  grounds including, without limitation, that the forfeiture

17  constitutes an excessive fine or punishment.  Defendant acknowledges

18  that the forfeiture of the Forfeitable Property is part of the

19  sentence that may be imposed in this case and waives any failure by

20  the Court to advise defendant of this, pursuant to Federal Rule of

21  Criminal Procedure 11(b)(1)(J), at the time the Court accepts

22  defendant's guilty plea.

23     4.   Defendant also agrees to:

24          a.   Agree that all court appearances, including her change

25  of plea hearing and sentencing hearing, may proceed by video-

26  teleconference ("VTC") or telephone, if VTC is not reasonably

27  available, so long as such appearances are authorized by Order of the

28  Chief Judge 20-043 or another order, rule, or statute.   Defendant

understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), she may have the right to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

       i.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

       ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her change of plea hearing by VTC or telephone, if VTC is not reasonably available.

       iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with her sentencing hearing by VTC or telephone, if VTC is not reasonably available.

       iv.  Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

   a.   Not contest facts agreed to in this agreement.

   b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 13 or higher and provided that the Court does not depart downward in offense level or criminal history category.   For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

e.   Because the justice system is facing an unprecedented crisis through the backlog of cases, the parties agree that the defendant is entitled to a two-level variance as recognition of defendant's early acceptance of responsibility, which will lessen the burden on the court system by: (1) waiving any right to presence and pleading guilty at the earliest opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's General Order allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) waiving most of her appellate rights.

7

1        f.   Except for criminal tax violations (including

2 conspiracy to commit such violations chargeable under 18 U.S.C.

3 § 371), not further criminally prosecute defendant for violations of

4 18 U.S.C. § 1028A arising out of defendant's conduct described in the

5 agreed-to factual basis set forth in paragraph 12 below.  Defendant

6 understands that the USAO is free to criminally prosecute defendant

7 for any other unlawful past conduct or any unlawful conduct that

8 occurs after the date of this agreement.  Defendant agrees that at

9 the time of sentencing the Court may consider the uncharged conduct

10 in determining the applicable Sentencing Guidelines range, the

11 propriety and extent of any departure from that range, and the

12 sentence to be imposed after consideration of the Sentencing

13 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

14 NATURE OF THE OFFENSE

15    6.   Defendant understands that for defendant to be guilty of

16 the crime charged in the sole count of the information, that is, Wire

17 Fraud, in violation of 18 U.S.C. § 1343, the following must be true:

18 (1) the defendant knowingly participated in, devised, or intended to

19 devise a scheme or plan to defraud, or a scheme or plan for obtaining

20 money or property by means of false or fraudulent pretenses,

21 representations, or promises; (2) the statements made or facts

22 omitted as part of the scheme were material; that is, they had a

23 natural tendency to influence, or were capable of influencing, a

24 person to part with money or property; (3) the defendant acted with

25 the intent to defraud; that is, the intent to deceive or cheat;

26 (4) the defendant used, or caused to be used wire communication in

27 interstate or foreign commerce to carry out or attempt to carry out

28 an essential part of the scheme.

## PENALTIES AND RESTITUTION

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343 affecting a financial institution, is: 30 years' imprisonment; a three-year period of supervised release; a fine of $1,000,000; and a mandatory special assessment of $100.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant

1   conduct, as defined in U.S.S.G. § 1B1.3, in connection with those

2   charges.   The parties currently believe that the applicable amount of

3   restitution is approximately $477,000, but recognize and agree that

4   this amount could change based on facts that come to the attention of

5   the parties prior to sentencing.

6        10.   Defendant understands that, by pleading guilty, defendant

7   may be giving up valuable government benefits and valuable civic

8   rights, such as the right to vote, the right to possess a firearm,

9   the right to hold office, and the right to serve on a jury.

10  Defendant understands that she is pleading guilty to a felony and

11  that it is a federal crime for a convicted felon to possess a firearm

12  or ammunition.   Defendant understands that the conviction in this

13  case may also subject defendant to various other collateral

14  consequences, including but not limited to revocation of probation,

15  parole, or supervised release in another case and suspension or

16  revocation of a professional license.   Defendant understands that

17  unanticipated collateral consequences will not serve as grounds to

18  withdraw defendant's guilty plea.

19       11.   Defendant understands that, if defendant is not a United

20  States citizen, the felony conviction in this case may subject

21  defendant to: removal, also known as deportation, which may, under

22  some circumstances, be mandatory; denial of citizenship; and denial

23  of admission to the United States in the future.   The Court cannot,

24  and defendant's attorney also may not be able to, advise defendant

25  fully regarding the immigration consequences of the felony conviction

26  in this case.   Defendant understands that unexpected immigration

27  consequences will not serve as grounds to withdraw defendant's guilty

28  plea.

1              FACTUAL BASIS

2        12.   Defendant admits that defendant is, in fact, guilty of the

3   offense to which defendant is agreeing to plead guilty.   Defendant

4   and the USAO agree to the statement of facts provided below and agree

5   that this statement of facts is sufficient to support a plea of

6   guilty to the charge described in this agreement and to establish the

7   Sentencing Guidelines factors set forth in paragraph 14 below but is

8   not meant to be a complete recitation of all facts relevant to the

9   underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11  **Background – Unemployment Benefits**

12       The United States Department of Labor's unemployment insurance

13  ("UI") program provides temporary benefits to eligible workers who

14  become unemployed through no fault of their own.   The UI benefits

15  ensure that at least a significant portion of the necessities of life

16  – most notably food, shelter, and clothing – are met on a weekly

17  basis while the worker seeks employment.   In California, the

18  Employment Development Department ("EDD") administers the UI program

19  for residents and others physically performing work activities in

20  California.   The EDD administers the UI program within the guidelines

21  established by federal law.   Generally speaking, regular UI claimants

22  must be: (1) unemployed through no fault of their own; (2) able and

23  available for work; (3) willing to accept suitable work; and

24  (4) actively seeking work.

25       In response to the UI benefits applications, the EDD

26  periodically deposits UI funds to an electronic bill payment ("EBP")

27  debit card administered by Bank of America.   The EBP card is sent via

28

                              11

1   the United States Postal Service to the claimant at the address the

2   claimant provides in their UI claim.

3            **Pandemic Unemployment Assistance Under the CARES Act**

4            On March 13, 2020, President Donald J. Trump declared the COVID-

5   19 pandemic an emergency under the Robert T. Stafford Disaster Relief

6   and Emergency Assistance Act.  On March 27, 2020, the CARES Act was

7   enacted to provide emergency assistance and health care response for

8   individuals, families, and businesses affected by the COVID-19

9   pandemic.  The CARES Act established, among other things, programs

10  which expanded UI benefits including: (1) Pandemic Unemployment

11  Assistance ("PUA") benefits for individuals who are out of work due

12  to the pandemic, including those who had not previously qualified for

13  regular state UI benefits such as self-employed, contract, and "gig

14  workers," (2) the Pandemic Emergency Unemployment Compensation

15  benefit, a 13-week benefit extension for people who have used all

16  benefits available in their regular UI claim, and (3) the Pandemic

17  Additional Compensation benefit, an additional $600 federal stimulus

18  payment automatically added to each week of benefits received between

19  March 29, 2020 and July 25, 2020.

20           On August 8, 2020, President Trump signed a Presidential

21  Memorandum authorizing the Federal Emergency Management Agency

22  ("FEMA") to use disaster relief funds pursuant to the Other Needs

23  Assistance provision of Section 408 of the Stafford Act to provide

24  supplemental payments for lost wages to help ease the financial

25  burden on individuals who were unemployed as a result of COVID-19.

26  The Lost Wages Assistance Program ("LWAP") served as a temporary

27  measure to provide individuals with an additional $300 per week via a

28

1  total of $44 billion in FEMA funds.  The period of assistance for
2  LWAP was August 1, 2020 to December 27, 2020.

3      On December 27, 2020, President Trump signed into law the
4  Consolidated Appropriations Act of 2021, which extended the period of
5  applicability for the PUA program created by the CARES Act to those
6  weeks of unemployment ending on or before March 14, 2021.

7      **Defendant's Fraudulent UI Claims**

8      From at least June 2020 through December 2020, defendant
9  submitted at least 47 fraudulent UI claims to the EDD, knowing that
10 the statements she made in support of those claims were false.
11 Defendant used the names, social security numbers, dates of birth,
12 and other personally identifiable information ("PII") of California
13 state prison inmates and others to submit UI claims to the EDD as if
14 those persons were submitting the claims themselves.  Defendant had
15 received the inmates' information as well as the information of non-
16 inmates from various third parties and in exchange for cash payments,
17 she offered to file UI benefit applications using the information
18 that they provided.  Defendant knew that inmates were ineligible
19 for UI benefits under the EDD's requirements because they were
20 unable and unavailable to work and not actively seeking employment
21 due to their incarceration status.

22     Defendant used the PII of inmates and non-inmates which she
23 obtained from third parties to submit online applications for UI
24 benefits on the EDD website.  Defendant falsely represented to the
25 EDD on online UI benefits applications that the inmates were
26 unemployed because of the COVID-19 pandemic.  Defendant also
27 knowingly entered false occupations for each inmate and non-inmate
28 in UI benefits applications and created various e-mail addresses

1  and EDD website log-in credentials so that she could monitor the
2  status of the applications.

3      For example, on July 9, 2020, defendant filed a UI claim
4  using inmate D.V.'s name, date of birth, and social security
5  number, causing the EDD to pay out $2,672 in UI benefits to a Bank
6  of America account held in inmate D.V.'s name.  On July 12, 2020,
7  defendant filed a UI claim using inmate D.C.'s name, date of
8  birth, and social security number, causing the EDD to pay out
9  $4,676 to a Bank of America Account held in inmate D.C.'s name.
10 Then on July 26, 2020, defendant filed a UI claim using inmate
11 J.A.'s information, causing the EDD to pay out $20,020 to an
12 account in inmate J.A.'s name.  For each of these inmates,
13 defendant filed a UI claim using a fictitious occupation and
14 asserted a false reason for unemployment.

15     Defendant entered false mailing addresses in online UI
16 benefits applications as specified by third parties, which caused
17 EBP debit cards to be shipped directly to the third parties.  The
18 third parties paid defendant for filing the fraudulent UI benefits
19 applications after they received the EBP debit cards.  In exchange
20 for the cash payment, defendant gave the third parties the EDD
21 website login credentials which she created using the personal
22 information that the third party had provided.

23     In all, defendant filed or was responsible for at least 47
24 fraudulent UI claims using the information of California state prison
25 inmates and non-inmates, causing the EDD to disburse approximately
26 $477,000 in UI benefits from approximately June 2020 through December
27 2020.

28

1    Defendant filed UI claims that were premised on false material
2    information about the inmates and other persons.  Defendant submitted
3    the UI claims with the intent to defraud, that is, the intent to
4    deceive the EDD to provide UI benefits to persons who were ineligible
5    to receive them and to direct the EBP debit cards to be sent to
6    addresses where defendant or others could obtain them.  In submitting
7    the UI claims, defendant used or caused to be used, wire
8    communications in interstate and foreign commerce in that the UI
9    benefits crossed state lines and utilized the interstate banking
10   system resulting in the disbursement of the UI benefits on at least
11   47 UI claims submitted by defendant.

12                              SENTENCING FACTORS

13        13.  Defendant understands that in determining defendant's
14   sentence the Court is required to calculate the applicable Sentencing
15   Guidelines range and to consider that range, possible departures
16   under the Sentencing Guidelines, and the other sentencing factors set
17   forth in 18 U.S.C. § 3553(a).  Defendant understands that the
18   Sentencing Guidelines are advisory only, that defendant cannot have
19   any expectation of receiving a sentence within the calculated
20   Sentencing Guidelines range, and that after considering the
21   Sentencing Guidelines and the other § 3553(a) factors, the Court will
22   be free to exercise its discretion to impose any sentence it finds
23   appropriate up to the maximum set by statute for the crime of
24   conviction.

25        14.  Defendant and the USAO agree to the following applicable
26   Sentencing Guidelines factors:

27        Base Offense Level:              7     [U.S.S.G. § 2B1.1(a)(1)]

28

Loss more than $250,000:          +12   [U.S.S.G. § 2B1.1(b)(1)(G)]
Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

15.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

                    WAIVER OF CONSTITUTIONAL RIGHTS

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

          a.  The right to persist in a plea of not guilty.

          b.  The right to a speedy and public trial by jury.

          c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

          d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

          e.  The right to confront and cross-examine witnesses against defendant.

          f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

16

1        g.   The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4        h.   Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7               WAIVER OF APPEAL OF CONVICTION

8     18.  Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty plea was involuntary, by

10  pleading guilty defendant is waiving and giving up any right to

11  appeal defendant's conviction on the offense to which defendant is

12  pleading guilty.  Defendant understands that this waiver includes,

13  but is not limited to, arguments that the statute to which defendant

14  is pleading guilty is unconstitutional, and any and all claims that

15  the statement of facts provided herein is insufficient to support

16  defendant's plea of guilty.

17            WAIVER OF RETURN OF DIGITAL DATA

18     19.  Understanding that the government has in its possession

19  digital devices and/or digital media seized from defendant, defendant

20  waives any right to the return of digital data contained on those

21  digital devices and/or digital media and agrees that if any of these

22  digital devices and/or digital media are returned to defendant, the

23  government may delete all digital data from those digital devices

24  and/or digital media before they are returned to defendant.

25          WAIVER OF APPEAL AND COLLATERAL ATTACK

26     20.  Defendant gives up the right to appeal all of the

27  following: (a) the procedures and calculations used to determine and

28  impose any portion of the sentence; (b) the term of imprisonment

1   imposed by the Court, provided it is no more than the high-end of the
2   Sentencing Guidelines range calculated by the Court; (c) the fine
3   imposed by the Court, provided it is within the statutory maximum;
4   (d) the term of probation or supervised release imposed by the Court,
5   provided it is within the statutory maximum; and (e) any of the
6   following conditions of probation or supervised release imposed by
7   the Court: the conditions set forth in Second Amended General Order
8   20-04 of this Court; the drug testing conditions mandated by 18
9   U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
10  conditions authorized by 18 U.S.C. § 3563(b)(7).

11      21.  Defendant also gives up any right to bring a post-
12  conviction collateral attack on the conviction or sentence, except a
13  post-conviction collateral attack based on a claim of ineffective
14  assistance of counsel, a claim of newly discovered evidence, or an
15  explicitly retroactive change in the applicable Sentencing
16  Guidelines, sentencing statutes, or statutes of conviction.
17  Defendant understands that this waiver includes, but is not limited
18  to, arguments that the statute to which defendant is pleading guilty
19  is unconstitutional, and any and all claims that the statement of
20  facts provided herein is insufficient to support defendant's plea of
21  guilty.

22      22.  The USAO agrees that, provided all portions of the sentence
23  are at or below the statutory maximum specified above, the USAO gives
24  up its right to appeal any portion of the sentence, with the
25  exception that the USAO reserves the right to appeal the following:
26  the amount of restitution ordered if that amount is less than
27  $477,000.

28

1                    RESULT OF WITHDRAWAL OF GUILTY PLEA

2          23.   Defendant agrees that if, after entering a guilty plea

3    pursuant to this agreement, defendant seeks to withdraw and succeeds

4    in withdrawing defendant's guilty plea on any basis other than a

5    claim and finding that entry into this plea agreement was

6    involuntary, then (a) the USAO will be relieved of all of its

7    obligations under this agreement; and (b) should the USAO choose to

8    pursue any charge that was either dismissed or not filed as a result

9    of this agreement, then (i) any applicable statute of limitations

10   will be tolled between the date of defendant's signing of this

11   agreement and the filing commencing any such action; and

12   (ii) defendant waives and gives up all defenses based on the statute

13   of limitations, any claim of pre-indictment delay, or any speedy

14   trial claim with respect to any such action, except to the extent

15   that such defenses existed as of the date of defendant's signing this

16   agreement.

17                    EFFECTIVE DATE OF AGREEMENT

18         24.   This agreement is effective upon signature and execution of

19   all required certifications by defendant, defendant's counsel, and an

20   Assistant United States Attorney.

21                    BREACH OF AGREEMENT

22         25.   Defendant agrees that if defendant, at any time after the

23   signature of this agreement and execution of all required

24   certifications by defendant, defendant's counsel, and an Assistant

25   United States Attorney, knowingly violates or fails to perform any of

26   defendant's obligations under this agreement ("a breach"), the USAO

27   may declare this agreement breached.   All of defendant's obligations

28   are material, a single breach of this agreement is sufficient for the

1   USAO to declare a breach, and defendant shall not be deemed to have
2   cured a breach without the express agreement of the USAO in writing.
3   If the USAO declares this agreement breached, and the Court finds
4   such a breach to have occurred, then: (a) if defendant has previously
5   entered a guilty plea pursuant to this agreement, defendant will not
6   be able to withdraw the guilty plea, and (b) the USAO will be
7   relieved of all its obligations under this agreement.

8       26.   Following the Court's finding of a knowing breach of this
9   agreement by defendant, should the USAO choose to pursue any charge
10  that was not filed as a result of this agreement, then:

11          a.   Defendant agrees that any applicable statute of
12  limitations is tolled between the date of defendant's signing of this
13  agreement and the filing commencing any such action.

14          b.   Defendant waives and gives up all defenses based on
15  the statute of limitations, any claim of pre-indictment delay, or any
16  speedy trial claim with respect to any such action, except to the
17  extent that such defenses existed as of the date of defendant's
18  signing this agreement.

19          c.   Defendant agrees that: (i) any statements made by
20  defendant, under oath, at the guilty plea hearing (if such a hearing
21  occurred prior to the breach); (ii) the agreed to factual basis
22  statement in this agreement; and (iii) any evidence derived from such
23  statements, shall be admissible against defendant in any such action
24  against defendant, and defendant waives and gives up any claim under
25  the United States Constitution, any statute, Rule 410 of the Federal
26  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
27  Procedure, or any other federal rule, that the statements or any

28

1  evidence derived from the statements should be suppressed or are
2  inadmissible.

COURT AND UNITED STATES PROBATION AND

PRETRIAL SERVICES OFFICE NOT PARTIES

5      27.  Defendant understands that the Court and the United States
6  Probation and Pretrial Services Office are not parties to this
7  agreement and need not accept any of the USAO's sentencing
8  recommendations or the parties' agreements to facts or sentencing
9  factors.

10     28.  Defendant understands that both defendant and the USAO are
11  free to: (a) supplement the facts by supplying relevant information
12  to the United States Probation and Pretrial Services Office and the
13  Court, (b) correct any and all factual misstatements relating to the
14  Court's Sentencing Guidelines calculations and determination of
15  sentence, and (c) argue on appeal and collateral review that the
16  Court's Sentencing Guidelines calculations and the sentence it
17  chooses to impose are not error, although each party agrees to
18  maintain its view that the calculations in paragraph 14 are
19  consistent with the facts of this case.  While this paragraph permits
20  both the USAO and defendant to submit full and complete factual
21  information to the United States Probation and Pretrial Services
22  Office and the Court, even if that factual information may be viewed
23  as inconsistent with the facts agreed to in this agreement, this
24  paragraph does not affect defendant's and the USAO's obligations not
25  to contest the facts agreed to in this agreement.

26     29.  Defendant understands that even if the Court ignores any
27  sentencing recommendation, finds facts or reaches conclusions
28  different from those agreed to, and/or imposes any sentence up to the

21

maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

NO ADDITIONAL AGREEMENTS

30.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

///

///

///

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          31.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    TRACY L. WILKISON
     Acting United States Attorney

9

10                                                5/3/2021
     BYRON R. TUYAY                               Date
11   Assistant United States Attorney

12                                                4/28/21
     PARIS DENISE THOMAS                          Date
13   Defendant

14                                                4/28/21
     Young Kim                                    Date
15   Deputy Federal Public Defender
     Attorney for Defendant
16   PARIS DENISE THOMAS

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

PARIS DENISE THOMAS
Defendant

4/28/21
Date

24

1        <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2        I am PARIS DENISE THOMAS's attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of her rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  a guilty plea pursuant to this agreement.

16

17  YOUNG KIM                                    Date  4/28/21
    Deputy Federal Public Defender
18  Attorney for Defendant
    PARIS DENISE THOMAS
19

20

21

22

23

24

25

26

27

28

                              25

# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          ED CR No.

11          Plaintiff,                  I N F O R M A T I O N

12          v.                          [18 U.S.C. § 1343: Wire Fraud; 18
                                        U.S.C. § 981(a)(1)(C) and 28
13   PARIS DENISE THOMAS,               U.S.C. § 2461(c): Criminal
                                        Forfeiture]
14          Defendant.

15

16        The Acting United States Attorney charges:

17                      [18 U.S.C. § 1343]

18   A.   INTRODUCTORY ALLEGATIONS

19        1.   At all times relevant to this Information:

20             a.   The United States Department of Labor's unemployment

21   insurance ("UI") program provided temporary benefits to eligible

22   workers who became unemployed through no fault of their own.  The UI

23   benefits ensured that at least a significant portion of the

24   necessities of life – most notably, food, shelter, and clothing –

25   were met on a weekly basis while the worker sought employment.  In

26   California, the Employment Development Department ("EDD")

27   administered the UI program for residents and others who physically

28   performed work activities in California.

b.   Generally, to receive UI benefits, claimants must be: (1) unemployed through no fault of their own; (2) able and available for work; (3) willing to accept suitable work; and (4) actively seeking work.  Applications for UI benefits may be made online from any digital device, including smartphones, that connects to the Internet and can access the EDD website's UI benefits page.

2.   In response to the UI benefits applications, the EDD provided UI funds to qualifying claimants via an electronic bill payment ("EBP") debit card administered by Bank of America.  The EBP cards were sent via the United States Postal Service to each qualifying claimant at the address the claimant provided in the UI benefits application.

3.   On March 27, 2020, the CARES Act was enacted to provide emergency assistance and health care response for individuals, families, and businesses affected by the COVID-19 pandemic.  The CARES Act established, among other things, programs which expanded UI benefits including: (1) Pandemic Unemployment Assistance ("PUA") benefits for individuals who are out of work due to the pandemic, including those who had not previously qualified for regular state UI benefits such as self-employed, contract, and "gig workers," (2) the Pandemic Emergency Unemployment Compensation ("PEUC") benefit, a 13-week benefit extension for people who have used all benefits available in their regular UI claim, and (3) the Pandemic Additional Compensation ("PAC") benefit, an additional $600 federal stimulus payment automatically added to each week of benefits received between March 29, 2020 and July 25, 2020.

4.   On August 8, 2020, President Donald J. Trump signed a Presidential Memorandum authorizing the Federal Emergency Management

2

1   Agency ("FEMA") to use disaster relief funds pursuant to the "Other

2   Needs" assistance provision of Section 408 of the Stafford Act to

3   create the Lost Wages Assistance Program ("LWAP") to provide

4   supplemental payments for lost wages to help ease the financial

5   burden on individuals who were unemployed as a result of COVID-19.

6   The LWAP served as a temporary measure to provide individuals with an

7   additional $300 per week via a total of $44 billion in FEMA funds.

8   The intended period of assistance for LWAP was August 1, 2020 to

9   December 27, 2020.

10        5.   On December 27, 2020, the President signed into law the

11  Consolidated Appropriations Act of 2021, which extended the period of

12  applicability for the PUA program created by the CARES Act to those

13  weeks of unemployment ending on or before March 14, 2021.

14        6.   Defendant PARIS DENISE THOMAS resided in Riverside County,

15  within the Central District of California.

16  B.   THE SCHEME TO DEFRAUD

17        7.   Beginning on a date unknown to the Grand Jury and

18  continuing through at least in or about December 2020, in Riverside

19  County, within the Central District of California, and elsewhere,

20  defendant THOMAS, knowingly and with the intent to defraud, devised,

21  participated in, and executed a scheme to defraud the EDD as to

22  material matters, and to obtain UI benefits from the EDD, by means of

23  materially false and fraudulent pretenses, representations, and

24  promises, and the concealment of material facts.

25        8.   The fraudulent scheme operated, in substance, as follows:

26        a.   Defendant THOMAS would communicate with a co-

27  conspirator currently incarcerated in California state prison to

28  obtain personally identifiable information ("PII") of other

3

California state prison inmates as well as information of other
individuals who were not incarcerated, including their names, social
security numbers, and dates of birth.

b. Defendant THOMAS would use the California state prison
inmates' and non-inmates' PII to submit false and fraudulent UI
benefits applications to the EDD when, in truth and in fact, as
defendant THOMAS then well knew, the persons whose PII was used were
not entitled to receive UI benefits from the EDD because they were
not (1) unemployed through no fault of their own; (2) able and
available for work; (3) willing to accept suitable work; and
(4) actively seeking work.

c. Defendant THOMAS would make false statements and
conceal material facts in the UI benefits applications in order to
induce the EDD to approve the false and fraudulent UI benefits
applications that defendant THOMAS submitted.

d. Defendant THOMAS would then cause UI benefits
applications to be transmitted by the wires to the EDD and cause
mailings to be sent from the EDD to claimant mailing addresses.

e. In response to the UI benefits applications that
defendant THOMAS filed, the EDD, through Bank of America, would
transfer funds into EBP debit card accounts held in the names of
persons, including California state prison inmates, whose PII was
used to file UI benefits applications but who were not entitled to
receive UI benefits.

f. Through her scheme, defendant THOMAS fraudulently
caused the EDD to transfer at least $477,000 of UI benefits payments
to EBP debit card accounts held in the names of persons, including

4

California state prison inmates, who were not entitled to receive UI benefits.

9. To execute the aforementioned scheme, defendant THOMAS made false and deceptive statements to the EDD including, without limitation, the following:

    a. That the California state prison inmates for whom defendant THOMAS submitted UI benefits claims lost their jobs or wages for reasons related to the COVID-19 pandemic; and

    b. That the California state prison inmates for whom defendant THOMAS submitted UI benefits claims resided at mailing addresses she entered on the UI benefits applications.

10. In carrying out the scheme to defraud, defendant THOMAS concealed, among others, the material fact that the persons whose PII she used to file UI benefits claims were not able and available to work, not actively seeking employment, and thus not eligible to receive UI benefits, at the time defendant THOMAS submitted the UI benefits applications.

C.   <u>USE OF INTERSTATE WIRES</u>

11. On or about August 5, 2020, in Riverside County, within the Central District of California, and elsewhere, defendant THOMAS, for the purpose of executing the above-described scheme to defraud, caused the transmission of a UI benefits application to the EDD using the name, date of birth, and social security number of J.A., a California state prison inmate, by means of wire communications in interstate and foreign commerce.

///

///

///

5

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in this Information.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4                                     TRACY L. WILKISON
                                       Acting United States Attorney
5

6

7                                     BRANDON D. FOX
                                       Assistant United States Attorney
8                                     Chief, Criminal Division

9                                     JERRY C. YANG
                                       Assistant United States Attorney
10                                    Chief, Riverside Branch Office

11                                    BYRON R. TUYAY
                                       Assistant United States Attorney
12                                    Riverside Branch Office

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28